## CATHARINE O'BRINE *vs.* BERNARD McNULTY.

Suffolk.    March 9. — May 4, 1877.    ENDICOTT & SOULE, JJ., absent.

In a bastardy case, in the absence of satisfactory evidence of the existence of a conspiracy, as contended, between the complainant and a third person to extort money from the respondent, the acts and declarations of that person in the complainant's absence are inadmissible as evidence against her ; and evidence to show improper relations between that person and a female witness, also claimed to be in the conspiracy, is immaterial.

COMPLAINT under the bastardy act. At the trial in the Superior Court, before *Gardner*, J., the complainant testified that the respondent had been improperly intimate with her during the year 1873 and down to September, 1874, and always at the house of one Barry, where during that time she lived; that the respondent was the father of her child, which was born on May 16, 1875, and that Barry first learned of her condition at the time of the complaint. Upon cross-examination, the complainant admitted that said Barry had used violence towards her and that she was afraid of him.

One Travis testified that she was a married woman, living separate from her husband; that she witnessed the intimacy between the respondent and complainant at Barry's house, where

she boarded with Barry a great part of 1874, and when not boarding there ; that she generally went there on Saturdays and remained till the following Monday ; that she went to Barry's house to do sewing and washing for wages which Barry agreed to pay and did pay her. , The respondent offered evidence tending to show that Travis had made different and contradictory statements at other times,

The respondent denied the charge against him, and that he had made any visits whatever at Barry's house in 1874 ; and testified that at interviews with the complainant he charged her with making a false accusation at the suggestion of, and acting in concert with, Travis and Barry, the purpose of the three being to fix upon him the paternity of the child, and so extort money from him ; that he went with Barry to Travis's rooms and found Travis and the complainant there ; that in their presence Barry asked him to drink ; that he did drink a number of times until he noticed that Barry was pretending to drink but was not drinking ; that he then said they were trying to get him intoxicated, and was about to leave the room when Barry and Travis got between him and the door to prevent his going out ; that the complainant said she wished to speak with him ; that Travis and Barry immediately went into an adjoining room, and that he then had his first interview with her; that Travis suddenly came back again without invitation, and proceeded to take part in the conversation ; that he then charged them with attempting to blackmail him, Travis advising him to settle the matter with Barry.

The respondent also offered evidence tending to show that he was, during 1873 and 1874, sexton of a church, of which his uncle was the pastor ; that Travis, Barry and the complainant attended that church until January, 1874, when Travis and Barry were notified that they would not be allowed to attend further because they were living together improperly and habitually ; and that Barry then took an oath that he would scatter the McNulty family ; that he knew of such threat.

The respondent also called Youngman, the physician who examined the complainant at the time of the complaint, and who testified that she had never paid him any money whatever for services that he did not change a fifty dollar bill for her, which

she had testified the respondent gave her, or for anybody, when he made the examination, but that a man, who appeared to be a relative of the complainant, and whose description answered to Barry's, paid him $8 in scrip. The complainant offered no evidence that the man who paid the $8 was any other person than Barry, and Barry being present was not called by the complainant as a witness. The respondent called Barry as a witness, and he testified that he first knew of this accusation and of the complainant's situation in December, 1874, on receipt of a letter from the complainant's lawyer, which was produced.

The complainant, on cross-examination, admitted that she had heard in 1874 from Barry that the respondent was a man of considerable property; and the respondent offered to show that Barry had stated that in 1874 or 1875, he went to the registry and procured copies of conveyances of land on record in the name of the respondent, although the respondent never had nor expected to have any business connection with Barry whatever. The respondent contended that this was evidence tending to show the purpose of Barry and the complainant in making the accusation, but the judge excluded the evidence, and the respondent excepted.

The respondent also contended that the conduct of the complainant, Travis and Barry, and the above evidence, tended to show a conspiracy between them with the common purpose to falsely charge him with the paternity of the child, and to fabricate evidence to support the same.

The respondent further contended that Travis was not telling the truth as to her visits to Barry's house. The testimony of the complainant as to the visits of the respondent was confirmed by a large number of witnesses. The respondent offered to show that a police officer went to Barry's place to replevy a coat, and that Barry said, " I sha'n't be here, but my wife will be here," pointing to Travis, the complainant not being present. This was offered only for the purpose of showing improper relations between Barry and Travis, but the judge excluded the evidence.

The jury returned a verdict of guilty; and the respondent alleged exceptions.

*J. L. Eldridge*, for the respondent.

*N. C. Berry*, for the complainant.

AMES, J. We see no ground for sustaining the only exceptions which have been argued. There was nothing before the court that would justify the presiding judge in admitting the declarations and acts of Barry, in the absence of the complainant, as evidence against her. If evidence satisfactory to the presiding judge had first been given of the existence of a conspiracy between Barry and the complainant for the purpose of extorting money from the respondent, the acts and declarations of Barry in reference to the common object would have been admissible. But we find no such evidence in the record. The evidence offered for the purpose of showing improper relations between Barry and the female witness Travis was irrelevant and immaterial, and was properly excluded. *Exceptions overruled.*